UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NUVASIVE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 11-cv-2897 |
| | § | |
| RENAISSANCE SURGICAL CENTER | § | |
| NORTH, L.P., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is a Motion to Dismiss and/or to Strike filed by Third Party Defendants Electrodiagnostics LLC, Outpatient Spine Centers P.A., Saqib A Siddiqui, and Woodlands Spine Centers P.A. (collectively, the "Third Party Defendants") (Doc. No. 20). Also pending in this case is a Motion for Partial Summary Judgment filed by Defendant Renaissance Surgical Center North, L.P. ("Renaissance") against the above Third-Party Defendants (Doc. No. 23). After considering the motions, all responses thereto, and the applicable law, the Court finds that both motions must be DENIED.

### I.    BACKGROUND

#### A.  The Complaint

This case arises from the alleged failure of Defendants Renaissance and K&S Consulting ASC, L.P. ("K&S") (collectively, the "Defendants") to pay amounts owed to Plaintiff NuVasive, Inc. ("NuVasive"). NuVasive is a San Diego-based medical device

1

company that designs, develops, and markets products for the surgical treatment of spine disorders. (Compl. ¶ 1, Doc. No. 1.) Renaissance is the owner of an ambulatory surgical center ("ASC") located in Humble, Texas. (*Id.* ¶ 2.)

At some point, NuVasive and Renaissance entered into a relationship through which NuVasive provided products for use by Renaissance surgeons. In its Complaint, NuVasive alleges that the business relationship between NuVasive and Renaissance is governed by NuVasive's "Terms and Conditions of Sale." (Compl. ¶¶ 16-17.) According to the Complaint, Renaissance began to fall behind in its payments for NuVasive devices at some point in 2009. (*Id.* ¶¶ 19-21.) NuVasive alleges that, from May 2009 to April 2010, Renaissance incurred an outstanding balance of $421.680.24, which it has refused to pay. (*Id.* ¶¶ 22-23.)  In August 2011, NuVasive brought this suit against Renaissance, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and goods sold and delivered at the agreed price. (*Id.* ¶¶ 27-39.)[1] NuVasive also seeks attorneys' fees and costs. (*Id.* ¶¶ 40-41.)

## B.  The Cross-Claim[2]

In September 2011, Renaissance filed an Answer to NuVasive's Complaint, which included a Cross-Claim against the Third Party Defendants. (Countercl., Doc. No. 13.) Renaissance alleges that, in 2007, it entered into a series of agreements with Third Party Defendant Dr. Saqib A Siddiqui, under which Dr. Siddiqui was granted use rights to the ASC in order to perform medical services for his patients. (*Id.* ¶ 9.) Dr. Siddiqui

---

[1] The Court notes that NuVasive's claims are brought under California law. The issue of which law applies in this case is not yet before the Court.

[2] These facts are drawn from Renaissance's Cross-Claim (Doc. No. 13). In considering the Third Party Defendants' motion to dismiss, the Court accepts the factual allegations in the Cross-Claim as true. *See, e.g.*, *Frame v. City of Arlington*, 575 F.3d 432, 433-34 (5th Cir. 2009). For the purposes of Renaissance's motion for summary judgment, the Court does not accept these allegations as true, and instead applies the summary judgment standard, provided below.

initially entered these agreements by and through Woodlands Spine Centers, P.A. ("Woodlands"), and later by and through Outpatient Spine Centers, P.A. ("Outpatient"). (*Id.*) The Court hereinafter refers to these entities as the "Spine Centers," and to the alleged contracts between Renaissance and these entities as the "ASC Use Agreements." In general terms, Renaissance indicates, the agreement between the parties provided as follows: "In exchange for the right to use the ASC, its facilities, equipment, and staff for medical services, the Spine Centers [] agreed to pay Renaissance certain 'use fees,' plus 110% of the cost of all surgical implants provided by Renaissance and utilized by [Third Party Defendants] at the ASC, plus $300 for each case performed at the ASC." (*Id.* ¶ 10.)

When Dr. Siddiqui first arrived at Renaissance, he made it clear that he had a preferred relationship with NuVasive, and he refused to cooperate with the ASC's recommendation of alternative products. (*Id.* ¶ 11.) Although the ASC attempted to accommodate Dr. Siddiqui's preferences, such accommodation became difficult by 2009, at which point "Renaissance began to see orders and extremely large invoices for NuVasive surgical implants and tools being used in Dr. Siddiqui's cases." (*Id.* ¶ 12.) Renaissance had difficulty recouping these costs from "certain insurance companies," which resulted in a large balance owed by Renaissance to NuVasive, and "an even larger balance" owed to Renaissance by the Spine Centers. (*Id.*)

Then, "[i]n an effort co control costs and to avoid the ballooning balances, Renaissance implemented new protocols for the ordering and use of NuVasive surgical tools and devices at its ASC." (*Id.* ¶ 13.) These new protocols were discussed with Dr. Siddiqui and with a number of NuVasive representatives, including sales representative Bland Chamberlain IV. (*Id.*) The first new protocol established a cap on the amount of

credit that Renaissance would agree to accept from NuVasive. Under this policy, NuVasive was not to deliver products if the current balance owed to NuVasive at the time of delivery was alleged by NuVasive to be more than $200,000. (*Id.*) NuVasive agreed to be bound by this protocol. The second protocol required NuVasive and the Spine Centers to give notice to Renaissance of any case in which NuVasive tools might be used, and to provide an estimate of the cost range for the NuVasive tools likely to be used in such a case. Renaissance was to pre-approve such costs, and to pre-pay the estimated cost before surgery took place. (*Id.* ¶ 14.)

According to Renaissance, Dr. Siddiqui and Mr. Chamberlain refused to abide by the new protocols, implementing NuVasive products in patients without authority or approval from the ASC. Mr. Chamberlain allegedly "repeatedly made products available to Dr. Siddiqui even though he knew that the [ASC] had made it clear that he was not to provide any tools unless they were pre-approved and pre-paid." (*Id.* ¶ 15.) Renaissance alleges that Dr. Siddiqui's frequent use of one NuVasive product in particular, "NeuroVision," is at the root of this dispute. (*Id.* ¶¶ 16-18.)

Renaissance alleges that, unbeknownst and undisclosed to Renaissance at the time, Dr. Siddiqui and Mr. Chamberlain went into business together under the name "Electrodiagnostics LLC" ("Electro"). (*Id.* ¶ 19.) Renaissance alleges, upon information and belief, that Electro performed and billed for "neuro scanning services" performed on Dr. Siddiqui's patents at the ASC. (*Id.*) Thus, Dr. Siddiqui and Mr. Chamberlain engaged in what Renaissance calls a "scam": they pressured Renaissance to purchase NuVasive products on credit, because they had an independent and undisclosed financial interest in the use of NuVasive products. To hide this conduct, they did not assign the billing

4

function for related "neuro scanning services" to NuVasive (as would have been the normal course of action under the agreement between Renaissance and the Third Party Defendants), but rather billed those services separately. (*Id.* ¶ 20.) Renaissance concludes that, had it known of the agreement between Dr. Siddiqui and Mr. Chamberlain, it would not have participated in the transactions at issue in NuVasive's Complaint. (*Id.* ¶ 22.) Based upon the foregoing allegations, Renaissance asserts cross-claims against the Third Party Defendants for breach of contract, fraud in the inducement, and civil conspiracy. (*Id.* ¶¶ 24-35.)

### C.  The Pending Motions

The pending motions relate only to Renaissance's Cross-Claim. The first is the Third Party Defendants' motion to dismiss and/or strike Renaissance's Cross-Claim. The Third Party Defendants contend that Renaissance's claims must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Third Party Defendants also argue that Renaissance's claims must be stricken or dismissed pursuant to Federal Rule of Civil Procedure 14(a), because they are not dependent on the original claims brought by NuVasive against Renaissance. The second pending motion is a motion for summary judgment filed by Renaissance. Renaissance contends that, pursuant to its agreements with the Spine Centers, it is owed reimbursements for all surgical implants or tools used by the Spine Centers and Dr. Siddiqui at the ASC.

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss - Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), a defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 2006 WL 2870972, at *2 (5th Cir. Oct. 9, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1203 (3d ed. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Shandong Yinguang*

6

*Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950. The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Allegations of fraud must meet the stricter standards of Federal Rule of Civil Procedure 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "'At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). The Fifth Circuit has explained that "Rule 9(b) requires 'the who, what, when, where, and how' [of the alleged fraud] to be laid out." *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). A claim that a fraud allegation is insufficiently particular under Rule 9(b) is properly raised by a Rule 12(b)(6) motion for dismissal for failure to state a claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 n. 8 (5th Cir. 2009); *Carter v. Nationwide Property and Cas. Ins. Co.*, 2011 WL 2193385, at *1 (S.D. Tex. June 6, 2011).

7

Rule 9(b)'s particularity requirement is "supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring enough facts [taken as true] to state a claim to relief that is plausible on its face." *Id.* at 185 (quotations and footnote omitted). Thus Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186 (internal quotations omitted).

### B.  Motion to Strike/Dismiss - Rule 14(a)

Federal Rules of Civil Procedure 14(a) allows for a defendant, as third-party plaintiff, to implead an entity not party to the case "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a)(1). The Rule also provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). The purpose of Rule 14(a) is "to bring in third parties who are *derivatively* liable to the impleading party." *Hasan v. La. Dep't of Transp.*, 1999 WL 642861, at *2 (5th Cir. July 26, 1999). In other words, "[a] third-party claim may be asserted under Rule 14(a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party." 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice & Procedure § 1446 (3d ed. 2011). Therefore, a third-party complaint "require[s] that the 'defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.'" *Briones v. Smith Dairy Queens, Ltd.*, 2008 WL 4200931, at *2 (S.D. Tex. Sept. 9, 2008) (quoting *Anadarko Petroleum Corp. v. Great Plains Gas Compression, Inc.*, 2007 WL 38327, at *1 (S.D. Tex. Jan. 4, 2007); citing *McCain*

8

*Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849-50 (5th Cir. 1978) ("[A] third-party complaint is not proper under Rule 14 if the defendant cannot show a basis for the third-party defendant's liability to the defendant."); *US v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967) ("[A]n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim.")).

"Courts are granted 'wide discretion in determining whether to permit such third party procedure.'" *Id.* (quoting *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 183 (5th Cir. 1984)). "The factors applied when deciding whether to allow a third-party complaint include prejudice placed on the other parties, undue delay by the third-party plaintiff, lack of substance to the third-party claim, and advancing the purposes of Rule 14 (such as avoiding duplicative suits on closely related issues)." *Id.* (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1443 (2d ed. 1990)); *see also Am. Intern. Specialty Lines Ins. Co. v. 7-Eleven, Inc.*, 2009 WL 2448440, at *1 (N.D. Tex. Aug. 7, 2009).

### C.  Summary Judgment - Rule 56

Summary judgment is appropriate where the pleadings and evidence show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party then must go beyond the pleadings to find specific facts showing there is a genuine issue for

trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (footnote omitted) (internal quotation marks omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* at 1076 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Servs., LLC*, 341 F. App'x 26, 28 (5th Cir. 2009) (citation omitted). The Court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075.

### III.   ANALYSIS

#### A.  Motion to Dismiss

The Third Party Defendants move to dismiss Renaissance's Cross-Claim pursuant to Rule 12(b)(6). They contend that Renaissance fails to allege facts that state a claim for breach of contract, fails to sufficiently plead fraud under Rule 9(b), and cannot sustain a claim for conspiracy once its fraud claim is dismissed.

##### 1.  Breach of contract

Under Texas law, the elements of a claim for breach of contract are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the

10

breach." *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009).

Renaissance's breach of contract claim is based upon its assertion that the Spine Centers failed "to reimburse Renaissance for the costs of the surgical implants used in Dr. Siddiqui's surgeries." (Countercl. ¶ 26.) The Third Party Defendants assert that this statement fails to adequately allege how the Third Party Defendants breached the contract, as it does not identify which clauses of which of the four contracts between the parties were breached. Thus, the Third Party Defendants' argument appears to focus only on the first element of a breach of contract claim. As to this element, Renaissance alleges that the parties entered into valid contracts when they entered into the two ASC Use Agreements. (Countercl. ¶¶ 10, 25.) Renaissance alleges that, pursuant to these agreements between the parties, the Spine Centers "agreed to pay Renaissance certain 'use fees,' plus 110% of the cost of all surgical implants . . .utilized . . .at the ASC, plus $300 for each case performed at the ASC." (*Id.* ¶ 10.) These contentions are sufficient to allege the existence of a valid contract.

As to the second element, Renaissance alleges that it performed on the contract "when it provided access to [the ASC] to the [Spine Centers] for use in treating patients, when it worked with Dr. Siddiqui to procure the surgical implants he requested for his patients, and when it performed the billing and collections functions that it agreed to undertake." (*Id.* ¶ 25.) As to the third element, Renaissance alleges that the Spine Centers breached the ASC Use Agreements "by failing to reimburse Renaissance for the costs of the surgical implants used in Dr. Siddiqui's surgeries." (*Id.* ¶ 26.) Finally, as to the fourth element, Renaissance alleges that it suffered damages as a direct and proximate result of

11

the actions of the Spine Centers. (*Id.* ¶ 27.) The Court finds these allegations sufficiently clear to allege performance by Renaissance, breach by the Spine Centers, and damages. Because Renaissance plainly alleges each of the four elements necessary to state a claim for breach of contract, the Third Party Defendants' motion to dismiss this claim must be denied.

### 2. Fraudulent inducement

The Third Party Defendants also move to dismiss Renaissance's claim for fraudulent inducement brought against the Spine Centers. It is apparent from the allegations in the Cross-Claim that Renaissance's fraudulent inducement claim is based upon nondisclosure, rather than misrepresentation.

### a. Duty to disclose

Under Texas law, fraud by nondisclosure is a category of fraud. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). In order to be actionable, a claim for fraud by nondisclosure requires there to have been a duty to disclose. *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1202, 1208 (S.D. Tex. 2009); *see also Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 481 (5th Cir. 2000). Plaintiffs contend that, under Texas law, a duty to disclose may arise where a party makes a partial disclosure and conveys a false impression. Unfortunately, Texas law is anything but straightforward regarding the extent to which a duty to disclose exists absent a confidential or fiduciary relationship. "Several courts of appeals have held that a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression." *United Teacher Assocs.*, 414 F.3d at 564 (citing *Hoggett v. Brown*, 971 S.W. 2d 472,

487-88 (Tex. App.—Houston [14th Dist.] 1997, no writ; *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 636 (Tex. App.—San Antonio 1992, writ denied). Such a general duty to disclose facts in a commercial setting is also recognized by The Restatement (Second) of Torts. Restatement (Second) of Torts § 551 (2011).

In 2001, the Fifth Circuit opined that a duty to disclose can exist in Texas absent a fiduciary or confidential relationship. *Union Pacific Resources Group, Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001). Three weeks after the Fifth Circuit issued its interpretation of Texas law, the Texas Supreme Court considered the issue. *Bradford v. Vento*, 48 S.W.3d 749, 752-54 (Tex. 2001), involved a fraud claim asserted by an individual, Vento, who believed he had purchased a sports memorabilia store from the store's owner, Taylor. The defendant, Bradford, managed the mall in which the store was located. *Id.* at 752. Because of the agreement he believed he had with Taylor, Vento paid rent to Bradford, who congratulated him on the deal that he had gotten in purchasing the shop from Taylor. *Id.* As it turned out, the Taylor's lease was nonassignable. *Id.* Vento sued Bradford and others for fraud. *Id.*

The jury found in favor of Vento on his fraud claim, and the appellate court upheld the jury verdict. The appellate court explained that "[a] duty to disclose information may arise when one makes a partial disclosure and conveys a false impression." *Bradford v. Vento*, 997 S.W.2d 713, 725-26 (Tex. App.—Corpus Christi 1999, pet. granted.) Applying that law, the court concluded that, by "fail[ing] to disclose pertinent information regarding the procedures for obtaining a new lease," Bradford violated his duty to disclose. *Id.* The Texas Supreme Court reversed. The court noted that Texas has never adopted Section 551 of the Restatement (Second) of Torts, recognizing a

general duty to disclose facts in a commercial setting. 48 S.W.3d at 756. However, the Court ultimately based its conclusion on the fact that, even if Texas were to adopt such a general duty, there was "no evidence to support the jury's liability finding under the submitted jury charge." *Id.* Because there was no evidence that Bradford knew Vento was ignorant of the lease terms, or that Vento did not have an equal opportunity to obtain the correct information. *Id.* at 755-56.

The question for courts considering the duty to disclose after *Bradford* has been whether that case foreclosed the existence of a duty to disclose based upon a partial disclosure conveying a false impression. The Fifth Circuit has noted the confusion generated by *Bradford*:

> A reasonable jurist might well conclude, certainly after *Bradford*, that a duty to disclose exists in Texas only in the context of a confidential or fiduciary relationship. This court has so held in [*Coburn Supply Co., Inc. v. Kohler Co.*, 342 F.3d 372 (5th Cir. 2003)], the only Fifth Circuit case that discusses the relevant portion of *Bradford*. However, apart from *Coburn*, it would be fair to say that courts after *Bradford* (including this court) have not gotten the message, but have instead continued to find that a duty to disclose can exist in Texas absent a confidential or fiduciary relationship.

*United Teacher Assocs.*, 414 F.3d at 566 (citing *Rimade Ltd. v. Hubbard Enterprises, Inc.*, 388 F.3d 138, 143 (5th Cir. 2004); *Lewis v. Bank of America NA*, 347 F.3d 587, 587 (5th Cir. 2003); *Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 476-77 (Tex. App.—Forth Worth, 2003, no pet); *Pellegrini v. Cliffwood-Blue Moon Joint Venture, Inc.*, 115 S.W.3d 577, 580 (Tex. App.—Beaumont, 2003, no pet.). After noting this unresolved confusion, the Fifth Circuit concludes that "[f]ortunately, we need not decide whether a duty to disclose exists in Texas absent a confidential or fiduciary

14

relationship because, even if such a duty did exist," the plaintiff's claim would fail. 414 F.3d 558.

Because this issue is clearly unresolved by the Fifth Circuit, district courts have been left to determine the proper meaning of *Bradford*. A recent case in this district explained that the holding in *Bradford* was based upon the plaintiff's equal opportunity to discover withheld information. *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 651 (S.D. Tex. 2009). The court in *Suzlon* indicated that, absent such an equal opportunity to discover withheld information, a duty to disclose might exist. *Id.* This Court agrees with such a reading of *Bradford*. The case did not hold that such a duty to disclose cannot exist, and therefore did not overrule prior Texas case law instructing that it can. *See, e.g.*, *Hoggett v. Brown*, 971 S.W.2d 472, 487-88 (Tex. App.—Houston [14th Dist.] 1997, no writ) ([A] "a duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; (4) when one makes a partial disclosure and conveys a false impression."). Had the *Bradford* court intended such a ruling, it might not have engaged in such extensive analysis—which would have been dicta—regarding Bradford's knowledge of Vento's ignorance and the extent to which Vento had an equal opportunity to information.

A duty to disclose *can* exist absent a fiduciary relationship, and the Court finds that Renaissance has alleged such a duty here. Renaissance contends that Dr. Siddiquie insisted upon using NuVasive devices, in particular the "NeuroVision" device, but failed to disclose an independent, financial interest in the use of such devices. (Countercl. ¶¶ 17,

20.) Moreover, he pressured Renaissance into purchasing NuVasive devices on credit because of his independent financial interest in the company. (*Id.* ¶¶ 20, 21.) These facts sufficiently allege that disclosed partial information—the benefits of NuVasive devices— but conveyed a false impression—that he had an impartial, unbiased interest in the use of these devices at the ASC. The facts in this case are not yet sufficiently developed to indicate whether a duty to disclose *did* exist; however, the Cross-Claim alleges sufficient facts to indicate the possible existence of such a duty.

### b.  Elements of a fraud claim

In addition to the duty to disclose, "fraud by nondisclosure requires proof of all of the elements of fraud by affirmative misrepresentation, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, 2009 WL 150942, at *13 (S.D. Tex. Jan. 21, 2009) (citing *United Teacher Assocs.*, 414 F.3d at 567). The elements of a claim for fraud by nondisclosure are: (1) concealment or failure to disclose a material fact within the knowledge of the party; (2) knowledge that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) intent to take some action by concealing or failing to disclose the fact; and (4) injury to the other party as a result of acting without the knowledge of the undisclosed fact. *Cardinal Health*, 2009 WL 150942, at *13 (citing *Bradford*, 48 S.W.3d at 754-55).

The Third Party Defendants' motion to dismiss this claim focuses on the fact that the claim does not allege false representations. (Doc. No. 20 at 10.) However, the Court reads the claim as based not on false representations, but on the Third Party Defendants'

failure to disclose information.[3] As to a nondisclosure claim, the Third Party Defendants contend that such a claim must fail because there is no duty to disclose, and because Renaissance does not sufficiently allege damages.[4] The Court has already found that Renaissance's allegations are sufficient to indicate, at least at this early stage, the existence of a duty to disclose.

On the issue of damages, Third Party Defendants point out that a party claiming fraud in the inducement must allege damages that "flow directly" from the contract into which the party was induced to enter. *Lam v. Phoung Nguyen*, 335 S.W.3d 786, 790 (Tex. App.—Dallas, 2011 pet. denied). Renaissance's Cross-Claim alleges that "full damages will not be clear until discovery establishes the extent of [Electro's] financial gain in this case." (Countercl. ¶ 32.) Renaissance also alleges that, had it "known of Chamberlain's and Siddiqui's duplicity, it never would have participated in any of the transactions at issue in this case." (*Id.* ¶ 22.) These allegations, taken together, make clear that Renaissance's alleged damages are based upon the financial gain of Electro, which flows from the alleged fraudulent nondisclosures by Electro co-owners Dr. Siddiqui and Mr. Chamberlain. The Court finds that these allegations, taken together, are sufficient to allege damages for fraudulent inducement by nondisclosure. As to this claim, the Third Party Defendants' motion to dismiss must be denied.

---

[3] The Court notes that Renaissance does refer to "material misrepresentations" in its Cross-Claim. (Countercl. ¶ 31.) However, in light of the argument in its Response, which focuses on nondisclosure, the Court understands Renaissance to be asserting a claim only for fraudulent inducement through nondisclosure. If Renaissance intends to assert a claim based on affirmative misrepresentations, the Court agrees that such a claim would have to be dismissed, as Renaissance does not allege facts with sufficient particularity to support such a claim under the standard set forth in Rule 9(b). If such claims are intended, the Court instructs Renaissance to move for leave to amend its Cross-Claim.

[4] The Court assumes that Third Party Defendants do not attack the nondisclosure claim on other grounds because no other such grounds exist. Indeed, Renaissance pleads, with the specificity required by 9(b), a plethora of facts giving rise to its fraud by nondisclosure claim.

### 3.  Conspiracy

Finally, the Third Party Defendants move to dismiss Renaissance's conspiracy claim on the basis that the allegation of conspiracy to commit fraud cannot be sustained once the fraud claim itself is dismissed. As the Court has not dismissed Renaissance's fraud claim, this argument is inapposite. The Third Party Plaintiffs' motion to dismiss Renaissance's conspiracy claim must be denied.

### B.  Motion to Dismiss/Strike under Rule 14

The Third Party Defendants also move to dismiss and/or strike Renaissance's claims pursuant to Rule 14(a) on the basis that Renaissance's Cross-Claim against the Third Party Defendants is not derivative of NuVasive's original claim in this case.[5] In support of their argument, the Third Party Defendants direct the court to recent cases in Texas in which courts have concluded that a third party claim alleging amounts owed under a contract is not derivative of an original claim alleging amounts owed on a *separate* contract. *See, e.g.*, *Autotronic Systems, Inc. v. HRSG, Inc.*, 2008 WL 8053985 (S.D. Tex. Mar. 4, 2008) (the fact that defendant's failure to pay plaintiff was caused by third party defendant's failure to pay defendant did not create logical dependence); *Wells Fargo Bank, N.A. v. Pettus*, 2011 WL 3586405 (N.D. Tex. Aug. 16, 2011) (finding no dependence where plaintiff alleged that, had third party not breached its contract with defendant, defendant would not have breached its contract with plaintiff). The Court finds the cases cited by Third Party Defendants to be distinguishable from this case. Both cases

---

[5] It is not clear whether the Third Party Defendants move to dismiss under Rule 14(a)(1) or to strike under Rule 14(a)(4). The court need not resolve this question because it applies the same standard to both.

18

involved a party ("A") that sued another party ("B") for breach of contract. B then impleaded a third party ("C"), claiming that, but for C's breach of a separate contract, B would not have breached its agreement with A. In both cases, B had a breach of contract claim against C that existed independently of the claim between A and B. In *Pettus*, for example, the court noted that "the nexus with the principal action is not that it establishes the right to relief, but merely the *need* for relief." 2011 WL 3586405, at *3 (quoting *Mortg. Co. v. Mullins*, 514 F.2d 747, 750 (5th Cir. 1975) (internal quotation marks omitted).

Here, in contrast, Renaissance claims that the Third Party Defendants *created* Renaissance's liability to NuVasive, by "pressur[ing] Renaissance into 'purchasing' NuVasive products on credit because [Dr. Siddiqui and Mr. Chamberlain] had an independent, undisclosed financial interest in the use of NuVasive tools and supplies." (Countercl. ¶ 20.) Renaissance notes that, if the Court concludes that Renaissance has no liability to NuVasive, then Renaissance will not have a claim against the Third Party Defendants.

The primary purpose of Rule 14 is to promote judicial economy by eliminating circuitous actions. *See* 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 1442 (3d ed. 2011). This purpose is furthered by allowing Renaissance to assert that NuVasive and the Third Party Defendants acted in concert to create Renaissance's liability to NuVasive. The Third Party Defendants' Rule 14 motion must be denied.

## C. Motion for Summary Judgment

Renaissance moves for partial summary judgment against the Spine Centers, Woodlands and Outpatient. Renaissance asks the Court to issue summary judgment interpreting the contracts allegedly governing the parties' relationship; specifically, it asks the Court to hold that the reimbursement provisions of the ASC Use Agreements are clear and unambiguous, and that a later agreement did not alter the parties' reimbursement obligations.

The Third Party Defendants object to this motion on the basis that it asks for relief not requested in Renaissance's Cross-Claim. They urge that summary judgment on this motion would be improper, because Renaissance asks the Court to interpret contractual clauses, but does not include a request for declaratory judgment in its Cross-Claim.[6] The Court agrees that summary judgment is inappropriate in such a situation. More importantly, perhaps, the Court finds this motion to be premature. Among the numerous factual disputes that remain in this case is the Third Party Defendants' contention that the indemnity provisions in the contracts—the provisions sought to be construed in this motion for partial summary judgment—may not be applicable to the claims in the case. (*See* Doc. No. 25 at 8.) The Court simply does not have the facts it needs to know whether these provisions are or are not applicable. As such, the Court's interpretation of those provisions at this stage would be premature.

Because Renaissance did not request declaratory relief on contractual interpretation in its Cross-Claim, and because fact issues remain as to the relevance of the

---

[6] The Third Party Defendants also urge that a number of fact questions still exist in the case. Presumably Renaissance recognizes that fact issues still exist in the case, as it did not move for summary judgment on any of its actual, asserted claims. The Court notes the Third Party Defendants' indication that discovery has not yet begun on Renaissance's Cross-Claim, as the Cross-Claim was served on the Third Party Defendants only three months ago.

contractual language sought to be construed, the Court must deny Renaissance's motion for partial summary judgment.

**IV.    CONCLUSION**

For the reasons discussed above, the Third Party Defendants' Motion to Dismiss and/or to Strike must be **DENIED**. Renaissance's Motion for Partial Summary Judgment also must be **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 17th day of February, 2012.

_____
THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE